IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 03-cv-01104-REB-CBS

LEONARD BALDAUF,
        Plaintiff,
v.

FRANCES GAROUTTE et al.,
        Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Craig B. Shaffer

This civil action comes before the court on: (1)  Defendants' Motion to Dismiss (filed September 25, 2006) (doc. # 188); and (2) Baldauf's Cross Motion for Summary Judgment on Obstruction of Grievance Access" (filed April 16, 2007) (doc. # 213).  Pursuant to the Order of Reference dated September 10, 2003 (doc. # 11) and the memoranda dated September 26, 2006 (doc. # 189) and April 17, 2007 (doc. # 214), these matters were referred to the Magistrate Judge.

I.      Statement of the Case

Baldauf is a convicted felon currently incarcerated at the Sterling Correctional Facility ("SCF") in Sterling, Colorado.  The allegations in the Complaint address events that occurred during Baldauf's incarceration at the Colorado State Penitentiary ("CSP") and the San Carlos Correctional Facility ("SCCF") between January 2000 and July 2003.  (*See* Complaint at pp. 1-35).

Baldauf's Complaint, accepted for filing on June 17, 2003, sought relief pursuant to 42 U.S.C. § 1983 and requested nominal and exemplary damages, as well as declaratory and permanent injunctive relief.  Baldauf brought ten separate claims for relief against 65 Defendants.  On July 15, 2004, the Magistrate Judge recommended dismissal

of Baldauf's Complaint without prejudice for failure to exhaust his administrative remedies. (*See* doc. # 98).  Baldauf filed his objections to the Recommendation on August 10, 2004. Defendants responded to Baldauf's objections on August 30, 2004.  On September 3, 2004, the District Judge adopted the Magistrate Judge's Recommendation and dismissed Baldauf's Complaint without prejudice for failure to exhaust his administrative remedies. (*See* doc. # 110).  Baldauf filed a Notice of Appeal on October 1, 2004.

On June 24, 2005, the Tenth Circuit Court of Appeals remanded the case "for further proceedings on the question of exhaustion and whether Baldauf was prevented from exhausting his claims."  *Baldauf v. Garoutte*, 137 Fed. Appx. 137, 142 (10th Cir. (Colo.) June 24, 2005), *cert. denied*, 126 S. Ct. 1360 (2006).  The Tenth Circuit concluded that Baldauf's allegations were sufficient to raise an inference that Baldauf exhausted his "available" remedies, as he alleged that he was prevented from utilizing grievance procedures by Defendants' denial of grievance forms and refusal to process handwritten grievances.  *Baldauf v. Garoutte*, 137 Fed. Appx. at 142.  The mandate issued on August 8, 2005.

On remand, the Magistrate Judge ordered that written discovery regarding the remanded exhaustion issue be completed on or before November 29, 2005.  (*See* Minute Order dated September 30, 2005 (doc. # 125)).  On October 25, 2005, Baldauf filed a petition for *writ of certiorari* in the United States Supreme Court.  (*See* doc. # 145).  The Supreme Court denied Baldauf's petition for *writ of certiorari* on February 21, 2006.  (*See* doc. # 158).  Several matters were filed and ruled on by the Magistrate Judge between October 1, 2005 and July 1, 2006.

On July 26, 2006, the Magistrate Judge held a motions hearing and set deadlines for compliance with discovery obligations and for the filing of motions on the exhaustion issue remanded by the Tenth Circuit.  (*See* doc. # 178).  Defendants filed their Motion to Dismiss on September 25, 2006.  The court directed Baldauf to respond to Defendants'

Motion by October 20, 2006.  Baldauf sought and was granted additional time to respond. (*See* doc. # 194).  Baldauf filed a Motion to Compel on November 15, 2006.  At the conclusion of the hearing held on the Motion to Compel on December 6, 2006, the Magistrate Judge ordered Defendants to supplement their discovery responses by December 20, 2006 and ordered Baldauf to respond to Defendants' pending Motion to Dismiss by January 31, 2007.  Defendants sought and were granted additional time to supplement their discovery responses on or before December 27, 2006. (*See* doc. # 205). When Baldauf did not file his response by January 31, 2007, the court *sua sponte* granted Baldauf an extension of time to March 15, 2007 to respond to Defendants' pending Motion to Dismiss.  (*See* doc. # 208).  Baldauf filed his response on March 19, 2007 and filed additional exhibits to his Response on April 9, 2007.  (*See* docs. # 210 and # 212).  On April 16, 2007, Baldauf filed his "Cross Motion for Summary Judgment on Obstruction of Grievance Access" (doc. # 213).  Defendants filed their Response on June 5, 2007 (doc. # 224).

II.     Defendants' Motion to Dismiss

A.     Standard of Review

Defendants have moved to dismiss the Complaint for Baldauf's failure to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Prior to filing this civil action, Baldauf was required to exhaust administrative remedies pursuant to the PLRA.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Section 1997e(a) provides:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Defendants raised the issue of exhaustion by motions to dismiss.  (*See* Motion to Dismiss (doc. # 36);  Defendants' (Hadley and Gillespie) Motion to Dismiss (doc. # 53);

Defendants' (Bennett and Garoutte) Motion to Dismiss (doc. # 132); Defendants' Brief Regarding Jurisdiction (doc. # 153); Defendants' Combined Motion to Dismiss (doc. # 188)).  At the time Defendants' Motion to Dismiss was filed, the Tenth Circuit interpreted the PLRA as imposing "a pleading requirement."  *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1210 (10th Cir. 2003).  "A complaint that fails to allege the requisite exhaustion of remedies [was] tantamount to one that fails to state a claim upon which relief may be granted."  *Steele*, 355 F.3d at 1210.  "In the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under § 1997e."  *Steele*, 355 F.3d at 1211 (internal quotation marks and citation omitted).

"The Supreme Court recently rejected our rule in *Steele*, however, and set forth a new standard to govern PLRA lawsuits: 'failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints.' "  *Roberts v. Barreras*, ___ F.3d ___, 2007 WL 1113956 at * 4 (10th Cir. (N.M.) April 16, 2007) (quoting *Jones v. Bock*, --- U.S. ----, ----, 127 S.Ct. 910, 921, 166 (Jan. 22, 2007) and citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223 (10th Cir. (Kan.) Mar. 5, 2007)).  Now "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant."  *Roberts v. Barreras*, ___ F.3d ___, 2007 WL 1113956 at * 4.

The Magistrate Judge's July 15, 2004 Recommendation and the District Judge's September 3, 2004 Order relied on the Tenth Circuit's determination in *Ross v. Bernalillo*, 365 F.3d 1181, 1189 (10th Cir. 2004) that a prisoner's entire complaint should be dismissed if any claims are unexhausted.  (*See* docs. # 98 and # 110).  *Jones* also abrogated *Ross*.  The Supreme Court concluded that the PLRA did not require total exhaustion of all claims in a complaint.  *Jones*, 127 S. Ct. at 923-26.  Rather, the Court held that when a complaint contains both exhausted and unexhausted claims, district

courts should follow the usual procedural rule of "proceed[ing] with the good and leav[ing] the bad." *Jones*, 127 S. Ct. at 924.

At the status conference held on May 24, 2007, the parties agreed that the court may treat Defendants' Motion to Dismiss as to the issue of exhaustion of administrative remedies as a motion for summary judgment under Fed. R. Civ. P. 56. Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. The nonmoving party may not rest solely on the allegations in his or her pleadings, but must instead designate specific facts showing that there is a genuine issue for trial. The factual record must be viewed in the light most favorable to the nonmoving party. However, evidence that is merely colorable or not significantly probative is inadequate to withstand a summary judgment motion.

*Simpson v. University of Colorado*, 372 F. Supp 2d 1229, 1231 (D. Colo. 2005).

B.   Analysis

1.   Exhaustion Requirements

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' – rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 127 S. Ct. at 922 (quoting *Woodford v. Ngo*, 548 U.S. ----, ----, 126 S. Ct. 2378, 2384 (2006)). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 127 S. Ct. at 922-23. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 127 S. Ct. at 923.

CSP and SCCF are CDOC facilities. Thus, CDOC's administrative regulations provide the grievance procedures for inmate complaints. The court may take judicial notice of CDOC's administrative process. *See Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984) (court can take judicial notice of agency rules and regulations); *Antonelli v. Ralston*, 609 F.2d 340, 341, n. 1 (8th Cir. 1979) (judicial notice taken of Bureau of Prisons' Program Statement).

The United States Supreme Court recently considered "whether a prisoner can satisfy the Prison Litigation Reform Act's exhaustion requirement, 442 U.S.C. § 1997e(a), by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 126 S. Ct. at 2382. The Court held "that proper exhaustion of administrative remedies is necessary." *Woodford*, 126 S. Ct. at 2382. Proper administrative exhaustion is consistent with the general rule that "courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice*." *Woodford*, 126 S.Ct. at 2385 (emphasis in original) (citations omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 126 S. Ct. at 2386.

The CDOC grievance procedures are "applicable to a broad range of complaints including . . . policies and conditions within the jurisdiction of the corrections facility that affect [the inmate] personally, as well as actions by employees . . . and incidents occurring within the facility that affect [the inmate] personally." *See* Administrative Regulation No. 850-04 ("AR 850-04") Section IV. B.1.h. (2002).[1] AR No. 850-04 requires an inmate to

---

[1] Baldauf argues that the 2000 version of the Administrative Regulations applies here. The court does not find the differences between the 2000 and 2002 versions of AR 850-04 to be dispositive of the issue whether Baldauf was prevented from exhausting his administrative remedies.

attempt informal resolution and then to file a Step I grievance, a Step II grievance, and a Step III grievance. *See* AR No. 850-04 at Section IV. C. (2002).

An inmate must first attempt to resolve a grievance informally before filing a written formal grievance. AR 850-04 at Section IV. C. 1. (2002). The inmate must state in writing the grievance and the relief requested. AR 850-04 at Section IV. C. 1. b. (2002). The informal grievance "must be filed no later than 30 calendar days, from the date the offender knew, or should have known, of the facts giving rise to the grievance, or within 30 calendar days after the final action was decided which might result in a grievance being initiated." AR 850-04 at Section IV. C. 1. c. (2002). If not satisfied with the results of the informal grievance, the inmate must proceed to the Formal Grievance and Response Procedures. *See* AR 850-04 Section IV. C. 2. (2002). The inmate must file a Step 1 grievance within five calendar days of receipt of the "written informal resolution attempt." AR 850-04 at Section IV. C. 2. b. (2002). The offender must receive a response within 25 calendar days. AR 850-04 at Section IV. C. 2. b. (1). If not satisfied with the response to the Step 1 grievance, the inmate must next file a Step 2 grievance with the "Administrative Head, appropriate Director, Assistant Director of Correctional Services, Clinical Services, or their designees" within five calendar days of receipt of the Step 1 response. AR 850-04 at  Section IV. C. 2. c. (2002). The offender must receive a response within 25 calendar days. AR 850-04 at Section IV. C. 2. c. (2) (2002). If still not satisfied with the response, the inmate must file a Step 3 grievance with "the Step 3 Grievance Officer" within five calendar days of receipt of the Step 2 response. AR 850-04 at Section IV. C. 2. d. (2002). The offender must receive a response within 45 calendar days. AR 850-04 at Section IV. C. 2. d. (2) (2002). The denial of a Step 3 grievance constitutes exhaustion of the administrative process available to Colorado prisoners. AR 850-04 at Section IV. C. 2. d. (3), (8) (2002).

2.      Remand from the Tenth Circuit

The Tenth Circuit has found that Baldauf exhausted the grievance process regarding certain claims. *See Baldauf v. Garoutte*, 137 Fed. Appx. at 140.  Baldauf drafted his own allegations in the Complaint.  Those allegations frame the relationship between his claims and his administrative grievances.

Baldauf's Claim One alleges that several Defendants violated the Eighth Amendment by placing inmates under conditions of confinement that exacerbated existing mental disorders and caused inevitable psychiatric harm.  Baldauf's Claim Two alleges that virtually all of the Defendants violated the First Amendment by preventing him from accessing the courts or by retaliating against him for filing administrative grievances on various dates in 2001, 2002, and 2003.  In Claim Two, Baldauf alleges the taking of a magazine, denial of a book request, and postage overcharges.

Claim Three alleges that several Defendants violated Baldauf's due process protections afforded by the Fourteenth Amendment by keeping Baldauf and other inmates in administrative segregation without meaningful reviews.  Baldauf also alleges that such extended segregation constituted cruel and unusual punishment prohibited by the Eighth Amendment.

In Claim Four, Baldauf alleges that several Defendants violated the Eighth Amendment by failing to provide medical care for an injury caused to his arm by a pencil in November 2001.  Claim Five alleges that Defendants Neufeld, Shannon, Stoner, Crandell, Reid, and Atherton violated Baldauf's Eighth Amendment rights by using or allowing Department employees to exploit intake cells to inflict corporal punishment. Baldauf mentions the use of a helmet on March 14 and 15, 2002 and the conditions of the intake cell.

Baldauf's Claim Six alleges that several Defendants violated his First Amendment rights by improperly limiting the number of books he could possess while in administrative

segregation and by confiscating certain documents from his "legal mail." In Claim Seven, Baldauf alleges that numerous Defendants violated his First Amendment rights by failing to provide the forms necessary to file administrative grievances.

Claim Eight alleges that on or about March 15, 2002, several Defendants violated Baldauf's Eighth Amendment rights by the use of excessive force and deliberate indifference to conditions inflicted upon him while he was in an observation or intake cell. In Claim Nine, Baldauf alleges that several Defendants violated the Fourteenth Amendment by wrongfully depriving him of books and papers and by improperly deducting amounts from his inmate account to pay for a broken television. In Claim Ten, Baldauf alleges that Defendants Stoner, Crandell, King, Goodwin, Reid, Atherton, and Michaud denied unnamed inmates adequate mental health care while at CSP and SCCF and that he received inadequate mental health care in October 2000 and January 2002, in violation of his Eighth Amendment rights.

The Tenth Circuit has found that Baldauf exhausted the grievance process as to:

(1) television repair charges (letters dated March 26, 2002 and April 2, 2002); (2) unspecified expunged records (letter dated April 2, 2002); (3) a confiscated magazine (letter dated May 9, 2002); (4) unspecified antagonism by Sgt. Bennett (letter dated May 24, 2002); (5) prison conditions including treatment while on suicide watch (letter dated May 24, 2002); (6) resolution of a dispute with the mail room over a book received by Baldauf (letter dated June 6, 2002); (7) property inventory dispute over books (letter dated June 6, 2002); (8) mail overcharges (letter dated July 23, 2002); and (9) Rhonda Corretti being "ordered to do her job" (letter dated October 10, 2002).

*Baldauf v. Garoutte*, 137 Fed. Appx. at 140. Thus, the Tenth Circuit has determined that Baldauf has exhausted his administrative remedies as to: (1) Claim Two alleging retaliation in violation of the First Amendment by the taking of a magazine, denial of a book request, and postage overcharges; (2) Claims Five and Eight alleging violation of his Eighth Amendment rights based on the treatment and conditions in the intake cell when he was on suicide watch in March of 2002; (3) Claim Six alleging violation of First Amendment rights by improperly limiting the number of books he could possess while in administrative

segregation; and (4) Claim Nine alleging violation of the Fourteenth Amendment by wrongfully depriving him of books and by improperly deducting amounts from his inmate account to pay for a broken television.  *See Baldauf v. Garoutte*, 137 Fed. Appx. at 140 (finding that Baldauf has exhausted the grievance process as to "(1) television repair charges (letters dated March 26, 2002 and April 2, 2002); . . . (3) a confiscated magazine (letter dated May 9, 2002); . . . (5) prison conditions including treatment while on suicide watch (letter dated May 24, 2002); (6) resolution of a dispute with the mail room over a book received by Baldauf (letter dated June 6, 2002); (7) property inventory dispute over books (letter dated June 6, 2002); (8) mail overcharges (letter dated July 23, 2002))."[2]

3.      Allegation that Baldauf was Prevented from Exhausting Administrative Remedies

"The PLRA provides that '[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted.'"  *Baldauf v. Garoutte*, 137 Fed. Appx. at 141 (emphasis in original).  "[A]dministrative remedies are not 'available' when prison officials refuse to provide prisoners with grievance forms."  *Baldauf v. Garoutte*, 137 Fed. Appx. at 141. "[T]he plain meaning of 'available' indicates that if a prisoner is hindered from utilizing the grievance procedure, then that grievance procedure is not available."  *Baldauf v. Garoutte*, 137 Fed. Appx. at 141.  *See also Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002) (where prison officials prevent or thwart a prisoner from utilizing an administrative remedy, they have rendered that remedy "unavailable" and a court will deem that procedure

---

[2]      The court perceives no Claims for Relief that clearly correspond with Baldauf's exhausted grievances regarding "(2) unspecified expunged records (letter dated April 2, 2002); . . . (4) unspecified antagonism by Sgt. Bennett (letter dated May 24, 2002); . . . and (9) Rhonda Corretti being 'ordered to do her job' (letter dated October 10, 2002)."  *Baldauf v. Garoutte*, 137 Fed. Appx. at 140.

"exhausted").

In his Complaint, Baldauf answered the question "have you exhausted the available administrative remedies?" with a qualified "Yes." (*See* Complaint at p. 31 ¶ F. 2.). Baldauf contends that he has

> not filed any grievance since 11/02 due to pressures culminating in direct ultimatum to choose between filing them and release from AD SEG. All attempted grievances between April & November '02 were blocked by theft & withholding of forms, & refusal to process handwritten ones. Otherwise, have exhausted all <u>available</u> grievances. Issue is a subject of suit.

(*See* Complaint at p. 31 ¶ F. 2.).

More specifically, Baldauf alleged in Claim Seven of his Complaint that:

> • Several grievances Baldauf filed were routed to Defendant Garoutte rather than the Step III Grievance officer he intended and several prior requests "vanished."
> • Baldauf was denied forms and hand-written grievances that he submitted were not processed by Defendants Garoutte and Riddle.
> • Baldauf wrote to Defendants Wright, Schuh, and Atherton about the denial of forms but still did not receive any forms.
> • Baldauf's mother complained to Atherton and called Arellano about the denial of grievance forms, but he still received no forms.
> • Defendant Miller refused to supply forms. Miller withheld forms unless Baldauf provided documentation of informal resolution attempts despite the fact that no such requirement existed.
> • Defendant Gillespie refused or ignored all claims not on forms, despite being told by Baldauf that forms were unavailable.
> • Defendants Wright, Slack, Webb, Breidenbach, Lehman, Linam, Pruett, Leyba, Graham, Reid, McCall, and Ortiz failed to answer Baldauf's kites or letters.
> • Defendant Garoutte did not return a Step II response for 45 days despite Baldauf's requests and Gillespie denied the grievance for lack of a Step II response.
> • Other forms are freely distributed to prisoners each Sunday, but grievance forms are only available from case managers who "interrogate" prisoners before issuing the grievance forms.

*Baldauf v. Garoutte*, 137 Fed. Appx. at 141-42 (citations omitted).

The record before the court does not support Baldauf's allegations that he "was prevented from utilizing grievance procedures because he was denied grievance forms and handwritten grievances were not processed." *Baldauf v. Garoutte*, 137 Fed. Appx. at 142. Baldauf has not identified a time frame for many of his allegations. *See* Complaint

11

at p. 24 (no dates alleged when: (1) he was denied forms and hand-written grievances that he submitted were not processed by Defendants Garoutte and Riddle; (2) he wrote to Defendants Wright, Schuh, and Atherton about the denial of forms but still did not receive any forms; (3) Defendant Miller refused to supply forms and/or withheld forms unless Baldauf provided documentation of informal resolution attempts despite the fact that no such requirement existed; (4) Defendant Gillespie refused or ignored all claims not on forms, despite being told by Baldauf that forms were unavailable; (5) Defendants Wright, Slack, Webb, Breidenbach, Lehman, Linam, Pruett, Leyba, Graham, Reid, McCall, and Ortiz failed to answer Baldauf's kites or letters; (6) Defendant Garoutte did not return a Step II response for 45 days despite Baldauf's requests and Gillespie denied the grievance for lack of a Step II response; and (7) the complete failure by Garoutte, Riddle, Wright, Schuh, Slack, Atherton, Arellano, Gillespie, and Rulo to either provide forms or correct their withholding for a period of months).  Without alleging any specific dates or occasions on which he was denied access to the grievance system, Baldauf cannot state a claim for denial of access to the grievance system.

In contrast to Baldauf's conclusory allegations, there is evidence in the record that Baldauf was not denied grievance forms.  (*See* Exhibit B to Motion to Dismiss (doc. # 188-3) at ¶¶ 6-7).  Baldauf has continuously and frequently used the grievance system over a period of several years.  (*See* Exhibit C to Motion to Dismiss (doc. # 188-4) at pp. 1-21 of 21;  Exhibit B to Motion to Dismiss (doc. # 188-3) at ¶ 5; attachments to Complaint (doc. # 3); attachments to "Motion for Order to Cure Deficiency" (doc. # 112); attachments to "Plaintiff's Objections to Recommendation" (doc. # 102);   Exhibit G to Defendants' Response to Motion to Compel (doc. # 201-8); attachments to Baldauf's Response (doc. # 210-2) at pp. 15-23 of 28); Exhibits to Response (doc. # 212) at pp. 2-43, 53-54 of 55)).  The record demonstrates that prison officials expended substantial time responding to and processing Baldauf's many grievances.

More specifically, on or about June 17, 2003, Baldauf alleged that he was "effectively denied . . . any access to the [grievance] process since November, 2002." (Complaint at p. 25; *see also* "Plaintiff's Objections to Recommendation" (doc. # 102) at p. 2 ("grievances were unavailable to him between April and November '02 (a misprint - 2001) . . . and after November 2002")).[3] The record shows that during the time period that Baldauf alleges he could not obtain grievance forms, Baldauf in fact filed numerous grievances on a variety of issues. (*See, e.g.,* step two grievance dated November 5, 2002; step three grievance dated December 13, 2002 (attached to "Motion for Order to Cure Deficiency" (doc. # 112)); step one grievance dated November 18, 2002; step two grievance dated November 29, 2002; step three grievance dated December 31, 2002 (attached to "Plaintiff's Objections to Recommendation" (doc. # 102); DOC grievances (Exhibit G to Defendants' Response to Motion to Compel (doc. # 201-8)). On June 10, 2003, Baldauf filed five grievances. (*See* Exhibit G to Defendants' Response to Motion to Compel (doc. # 201-8)). The record indicates that Baldauf was provided several grievance forms during the time period between November 2002 and June 2003. (*See, e.g.,* entries dated June 6, 2003, May 19, 2003, April 17, 2003, November 15, 2002 (Exhibit C to Motion to Dismiss at pp. 18-20 (doc. # 188-4)). Baldauf's allegation that his handwritten grievances were not processed is also not substantiated by the record. (*See, e.g.,* Baldauf's Exhibits (doc. # 210) at pp. 43-52 of 55 (Step III Grievance Officer's response to six handwritten grievances submitted by Baldauf)). Contrary to his conclusory allegation at  p. 31 ¶ F. 2. of the Complaint, the record shows that Baldauf had access to the grievance system between November 2002 and June 2003.

Nor does the evidence substantiate Baldauf's conclusory allegations that he was denied forms or threatened with an ultimatum. (*See, e.g.,* Baldauf's Declaration (doc. #

---

[3]    On March 19, 2007, Baldauf clarified that "he was denied access to grievances . . . from April to November 2001 (not '02 . . . )." (Baldauf's Response (doc. # 210) at p. 2).

210-2) at pp. 1-3 of 28).  To the extent that Baldauf argues his fear of reprisal as a reason for not exhausting his administrative remedies (*see* Baldauf's Response (doc. # 210) at pp. 2, 13-14 of 28), he has made only a conclusory allegation without any support for such a claim.

Baldauf concedes that Claims One and Ten are not supported by "at least one exhausted grievance" (Baldauf's Response (doc. # 210) at p. 5) and the record supports Defendants' assertion that Baldauf did not exhaust these claims.  (*See* Baldauf's Exhibits (doc. # 212) at pp. 2-5 of 55 (no evidence of Step 3 grievance)).  Further, Baldauf's Claim Ten alleges violation of his Eighth Amendment rights in October 2000 and January 2002. Baldauf's allegation of denial of access to grievances from April to November 2001 does not demonstrate that Baldauf was prevented from exhausting his administrative remedies as to events that occurred in October 2000 and January 2002.

Baldauf's Claim Three alleges extended segregation without meaningful review. The record before the court does not support Defendants' assertion that Baldauf failed to exhaust this claim.  On November 18, 2002, November 29, 2002, and December 31, 2002, Baldauf filed Steps 1, 2 and 3 grievances regarding his continued placement in Administrative Segregation without review.  (*See* attachments to "Plaintiff's Objections to Recommendation" (doc. # 102)).  Defendants have not met their burden of proof regarding exhaustion of administrative remedies as to Claim Three.

Baldauf's Claim Four alleges that he did not receive proper medical treatment for a "point" of a pencil that got "deeply embedded in his arm" in November 2001. (Complaint at p. 19).  The record before the court supports Defendants' assertion that this claim was not exhausted.  (*See* Baldauf's Exhibits (doc. # 212) at pp. 35-36 of 55 (no evidence of Step 2 or Step 3 grievance); attachments to "Motion for Order to Cure Deficiency" (doc. # 112) dated September 13, 2002, October 12, 2002, November 5, 2002, and December 13, 2002 (complaint of nontreatment of pain filed almost one year after alleged injury);

14

attachments to Complaint (doc. # 3) (request for sick call dated January 23, 2002, request for sick call dated January 25, 2002, response to Step 1 grievance dated March 14, 2002, no Step 2 or Step 3 grievance)).  Baldauf's allegation of denial of access to grievances between April and November 2001 does not demonstrate that Baldauf was prevented from exhausting his administrative remedies as to Claim Four for improper medical treatment after November 2001.

Baldauf's Claim Seven alleges that Defendants failed to provide the forms necessary to file administrative grievances.  The record before the court does not support Defendants' assertion that Baldauf failed to exhaust this claim.  On May 18, 2002, June 15, 2002, and July 28, 2002, Baldauf filed Steps 1, 2 and 3 grievances regarding "obstruction" of the grievance process.  (*See* Baldauf's Exhibits (doc. # 212) at pp. 15-17 of 55).   Defendants have not met their burden of proof regarding exhaustion of administrative remedies as to Claim Seven.

Despite Baldauf's lengthy recitation of occasions on which he was denied grievance forms (*see* Baldauf's Response (doc. # 210) at pp. 4-12 of 28), the court need only decide whether the ten claims for relief in the Complaint were properly exhausted or whether Baldauf was thwarted from exhausting those claims.  *See Baldauf v. Garoutte*, 137 Fed. Appx. at 140 ("We agree with the magistrate judge that it is difficult to associate these grievances with particular claims in Baldauf's complaint and it is clear that these records do not establish that Baldauf has exhausted administrative remedies as to all claims").  In sum, the court concludes that Baldauf has failed to exhaust his administrative remedies as to Claims One, Four, and Ten.  "As a general matter, if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." *Jones*, 127 S. Ct. at 921.  Thus, Claims One, Four, and Ten are properly dismissed.

III.     Baldauf's Failure to Comply with Title 28 U.S.C. § 1915

On July 22, 2003, the court granted Baldauf leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  Baldauf was permitted to proceed with this civil action by paying an initial partial filing fee of $2.70 and was ordered to pay the remainder of the required $150.00 filing fee through monthly installments.  (July 22, 2003 Order (doc. # 6) at p. 3).  Title 28 U.S.C. §1915(b)(2) requires that a prisoner "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account."  Thus, the court ordered Baldauf to "make monthly payments to the court of twenty percent of the preceding month's income credited to his account or show cause why he has no assets and no means by which to make each monthly payment."  (July 22, 2003 Order at p. 3).  Baldauf was directed that, in order to show cause, he "must file a current certified copy of his trust fund account statement."  (July 22, 2003 Order at p. 3).  Baldauf was warned that failure to comply with these requirements may result in dismissal of his complaint without further notice.  (July 22, 2003 Order at pp. 2-3).

The court has advised Baldauf on numerous occasions that he is required to make monthly payments of twenty percent (20%) of the preceding month's income credited to his trust fund account or show cause each month why he has no assets and no means by which to make the monthly payment.  (*See* April 26, 2006 "Order Directing Plaintiff to Make Monthly Filing Fee Payment or to Show Cause" (doc. # 168);  December 22, 2005 Order (doc. # 150); December 13, 2005 "Order Directing Plaintiff to Make Monthly Filing Fee Payment or to Show Cause" (doc. # 144);  November 10, 2003 "Order Directing Plaintiff to Make Monthly Filing Fee Payment or to Show Cause" (doc. # 25); and July 22, 2003 "Order Granting 28 U.S.C. § 1915 Motion" (doc. # 6)).  Since submitting his $2.70 initial partial filing fee on July 22, 2003 (*see* doc. # 7), Baldauf has made only four monthly partial filing fee payments of $2.27 on August 2, 2006 (doc. # 183), $.35 on March 6, 2007 (doc. # 209), $1.36 on April 6, 2007 (doc. # 211), and $1.02 on June 5, 2007 (doc. # 225).

In lieu of making monthly partial filing fee payments, Baldauf has sporadically submitted inmate trust account statements to demonstrate why he has no assets and no means by which to make the monthly payments. For example, on February 12, 2004, Baldauf filed an inmate account summary indicating that he had received a deposit of $51.58 in January of 2004. (*See* doc. # 68). Baldauf spent $ 37.36 at the prison canteen that month but sent no partial filing fee payment to the court. On January 18, 2006, Baldauf filed an inmate account summary indicating that he had received a deposit of $12.46 in December of 2005. (*See* doc. # 151). Baldauf spent more than half of the amount of that deposit at the prison canteen but sent no partial filing fee payment to the court. On February 3, 2006, Baldauf filed an inmate account summary indicating that he had received a deposit of $12.83 in January of 2006. (*See* doc. # 154). Baldauf spent $9.34 at the prison canteen and made no partial filing fee payment to the court. Baldauf received deposits of $751.26 to his inmate account in 2005. (*See* Exhibit D to Defendants' Status Report (doc. # 182-5) at pp. 5-9). On October 27, 2005, Baldauf spent $249.53 on prison canteen items. (*See* Exhibit D to Defendants' Status Report (doc. # 182-5) at p. 8). Baldauf did not make any partial filing fee payments and did not submit any inmate trust account statements in 2005. The same pattern of deposits to Baldauf's account, spending on xeroxing, postage, and canteen items, and failure to make any partial filing fee payments  appears in docs. # 207 (February 9, 2007), # 191 (October 17, 2006), # 187 (September 25, 2006), # 174 (July 13, 2006), # 173 (June 19, 2006), # 162 (April 13, 2006), # 157 (March 3, 2006), # 104 (August 10, 2004), # 100 (July 27, 2004), # 97 (July 1, 2004), # 96 (June 2, 2004), # 87 (April 21, 2004), # 77 (March 15, 2004), # 60 (January 22, 2004), # 42 (December 16, 2003), and # 29 (November 26, 2003).

The court has warned Baldauf that he does not meet his monthly payment obligation by spending the money in his inmate account and claiming inability to make partial filing

fee payments. Nor is it sufficient for Baldauf to meet his monthly payment obligation only when specifically directed by the court by an order to pay or show cause. The court has repeatedly directed Baldauf either to make the required monthly payments of twenty percent (20%) of each month's income credited to his inmate trust account or show cause why he cannot make the required monthly payments by filing a certified copy of his inmate trust account statements. (*See, e.g.*, docs. # 168, # 150, # 144, # 86, # 25, # 6). The court has repeatedly warned Baldauf that if he fails to comply with the partial filing fee payment requirements at any time before the filing fee is paid in full, the court will recommend that this civil action be dismissed for failure to comply with the court's orders and Title 28 U.S.C. § 1915. (*See id.*). Baldauf's Complaint may properly be dismissed without prejudice for failure to comply with Title 28 U.S.C. § 1915.

A.    Statute of Limitations May Bar Refiling Even Upon Dismissal Without Prejudice

The Tenth Circuit Court of Appeals has held that "when a case is dismissed with prejudice or dismissed without prejudice at a time when the statute of limitations would ban refiling, a trial court must explain why it imposed the extreme sanction of dismissal." *Woodmore v. Git-N-Go*, 790 F.2d 1497, 1499 (10th Cir. 1986). Here, the court recommends dismissal without prejudice. However, the statute of limitations may bar refiling upon dismissal, even if the dismissal were stated to be without prejudice.

Baldauf alleged his claims pursuant to 42 U.S.C. § 1983. Section 1983 claims are subject to the most appropriate state statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 266 (1985); *Industrial Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994). Colorado law provides a two-year statute of limitations for actions brought pursuant to § 1983. *See* Colo. Rev. Stat. § 13-80-102(g) (establishing a two-year limitation period for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "all other actions of every

18

kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir.1993) (applying § 13-80-102 to § 1983 claim).

The determination of when a § 1983 action accrues is controlled by federal rather than state law. *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (citation omitted). "Section 1983 claims accrue, for the purpose of the statute of limitations, 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.' " *Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir.1991) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980)) (further quotations omitted). "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of injury which is the basis of his action." *Industrial Constructors Corp.*, 15 F.3d at 969. Baldauf's claims arise from events that he alleges occurred in the years 2000, 2001, 2002, and 2003. The two-year statute of limitations for Baldauf's § 1983 claims may bar refiling even upon dismissal without prejudice. Thus, the court must analyze the factors set forth in *Ehrenhaus v. Reynolds* in order to explain the sanction of dismissal. 965 F.2d 916, 920 (10th Cir. 1992) (reviewing district court's dismissal of complaint with prejudice as sanction for violation of discovery order). *See Gripe v. City of Enid, Oklahoma*, 312 F.3d 1184, 1187 (10th Cir. 2002) ("dismissal as a sanction under Rules 16(f) and 37(b)(2)(C) should ordinarily be evaluated under" *Ehrenhaus* factors); *Mobley v. McCormick*, 40 F.3d 337, 341 (10th Cir. 1994) (involuntary dismissal pursuant to Fed. R. Civ. P. 41(b) "should be determined by reference to the *Ehrenhaus* criteria").

B.    Analysis of *Ehrenhaus* Factors

The *Ehrenhaus* criteria are "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal . . . would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." 965 F.2d at 921

(internal quotation marks and citations omitted). "These factors do not create a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction." *Ehrenhaus*, 965 F.2d at 921.

Defendants have been prejudiced. Sixty five Defendants have been defending themselves from Baldauf's ten claims since this civil action was filed in 2003 while Baldauf has continually failed to comply with court orders and Title 28 U.S.C. § 1915. The court has expended its resources in repeatedly warning Baldauf of his obligations to comply with court orders and with Title 28 U.S.C. § 1915. The record does not reveal that anyone other than Baldauf is culpable for his ongoing failure to comply with the court's Orders and Title 28 U.S.C. § 1915. Baldauf has not demonstrated that he was unable to perform his obligations. Baldauf was fully warned of the possibility of dismissal for failure to comply with the court's Orders and Title 28 U.S.C. § 1915. There is no lesser sanction available under the circumstances, as it would be pointless to impose a financial sanction on a plaintiff who has failed to comply with previous court orders and statutory requirements for payment. Dismissal is appropriate to enforce the court's Orders and Title 28 U.S.C. § 1915.

Accordingly, IT IS RECOMMENDED that:

1.      Defendants' Motion to Dismiss (filed September 25, 2006) (doc. # 188) be GRANTED IN PART AND DENIED PART.

2.      Claims One, Four, and Ten be DISMISSED.

3.      This civil action may proceed on Claims Two, Three, Five, Six, Seven, Eight, and Nine.

4.      In the alternative, this civil action be DISMISSED for Baldauf's repeated and continuing failure to adequately comply with Title 28 U.S.C. § 1915 and the court's orders regarding partial filing fee payments.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. 28 U.S.C. § 636(b)(1). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. *See In re Griego*, 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *One Parcel of Real Property*, 73 F.3d at 1060. Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review

by the district court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 6th day of June, 2007.

BY THE COURT:


    s/Craig B. Shaffer
United States Magistrate Judge